**IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION**

| | | |
|---|---|---|
| **GEROME OWENS,** *Individually and behalf of all others similarly situated,* | § § § | |
| **Plaintiff,** | § § | |
| **v.** | § § | **Civil Action No. 17-693** |
| **Hospital Housekeeping Systems, LLC** | § § | |
| **Defendant.** | § § § | |

<u>**CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL**</u>

Plaintiff Gerome Owens ("Plaintiff" or "Owens") brings this class action complaint against Defendant Hospital Housekeeping Systems, LLC ("Defendant" or "HHS") to obtain redress for, and put an end to, Defendant's violations of the Fair Credit Reporting Act, ("FCRA" or "Act"), specifically its failure to provide proper disclosures and pre-adverse action notices and other required documents. Plaintiff, for his class action Complaint, alleges as follows upon personal knowledge as to himself and his own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by his attorneys.

**NATURE OF THE ACTION**

1.      Enacted to promote the accuracy, fairness, and privacy of consumer information contained in the files of consumer reporting agencies, the FCRA explicitly acts to protect both applicants for employment and existing employees from adverse employment action taken as a result of potentially inaccurate or immaterial information. To that end, employers who obtain and use consumer reports regarding their applicants and employees are required to provide to such applicant and employees: (1) express disclosures and authorizations prior to obtaining the

consumer reports, and (2) copies of the report obtained and a summary of rights under the Act

prior to taking any adverse employment action against them based on information contained in

such reports.

2.      Here, Defendant willfully violates the FCRA by: (1) failing to provide a

standalone up-front notice that HHS may procure consumer reports about its applicants and

employees, and (2) failing to provide its applicants and employees copies of such reports ***before***

taking adverse action against them.

3.      First, on information and belief, Defendant fails to provide its applicants or

employees with standalone notice that Defendant may obtain a consumer report about them for

employment purposes. Section 1681b(b)(2) establishes that such notice must be made "in a

document that consists solely of the disclosure." Here, on information and belief, Defendant

provides a disclosure that contains unnecessary and extraneous information and therefore fails to

standalone. That is, the disclosure and authorization are combined with unrelated information.

This violates Section 1681b(b)(2)(A)(i) of the FCRA, which unambiguously states that the

disclosure must be made "in a document that consists solely of the disclosure."

4.      Defendant has also willfully violated the FCRA by procuring background checks,

drugs tests, and consumer reports about its job applicants and employees without providing such

applicants and employees with copies of the reports and summaries of their FCRA rights before

taking adverse action against them. Instead, Defendant takes adverse action against applicants

and employees based on consumer reports *before* providing the applicant or employee with any

required "pre-adverse action" notice, copy of the report, or summary of rights. Indeed, it appears

that Defendant does not provide any pre-adverse action notice at all.

5.      As such, Defendant serially violates the FCRA.

6.      As a result of Defendant's willful violations of the FCRA, employees and applicants such as Plaintiff Owens are deprived of rights, including privacy rights guaranteed to them by federal law, and are thus entitled to statutory damages of at least $100 and not more than $1,000 for each violation. *See* 15 U.S.C. § 1681n(a)(1)(A).

## PARTIES

7.      Plaintiff Gerome Owens is a natural person and citizen of the State of Colorado. He resides in Denver, Colorado.

8.      Defendant HHS is a limited liability company existing under the laws of the State of Texas with its principal place of business located at 216 E. 4th Street, Austin, Texas 78701. Defendant does business in this District, throughout the State of Texas, and has a physical location in at least six states, including in Austin, Texas.

## JURISDICTION AND VENUE

9.      This Court has subject matter jurisdiction under 28 U.S.C. § 1331 because this action arises under the Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq*., which is a federal statute.

10.      This Court has personal jurisdiction over Defendant because its principal place of business is within this District, and Defendant conducts business in this District, is registered to do business in this District, operates a factory in this District, and the unlawful conduct alleged in the Complaint occurred in, was directed to, and/or emanated from this District.

11.      Venue is proper in this District under 28 U.S.C. § 1391 because Defendant conducts substantial business in this District, and Plaintiff's claims arose in substantial part out

of his application for a job with Defendant the form and content of which, on information and belief, was designed and decided upon and emanated from within this District.

## FACTS COMMON TO ALL COUNTS

12.     HHS is a privately owned company that started in 1975 (as Hospital Housekeeping Systems). Today, HHS provides hundreds of facilities with multiple service offerings, including: Environmental Services, Culinary and Nutrition, Patient Flow, Facilities, Clinical and Biomedical Engineering, and Linen Utilization and Laundry Management. In essence it provides janitorial services to hospitals, nursing homes, and restaurants.

13.     On information and belief, HHS employs hundreds if not thousands of people.

14.     HHS is headquartered in Austin, Texas but it does business at facilities across the United States.

15.     HHS uses the exact same job application for all of its facilities containing the same FCRA disclosures. Likewise, HHS employs the same process—taking adverse action before providing notice of its intent to do so—throughout all of its facilities.

## FACTS SPECIFIC TO PLAINTIFF GEROME OWENS

16.     In or around March 2017, Plaintiff applied for work to be a janitor with HHS at Hillcrest Medical Center in Tulsa, Oklahoma.

17.     The job sought was not one regulated by the Department of Transportation.

18.     Shortly thereafter, he was invited to interview for the position.

19.     Mr. Owens was thereafter notified via telephone by a woman named Kenya that he was not being hired due to his background check.

20.     Several days later Mr. Owens called HHS and requested his application, background check, and any other documents or disclosures provided to him/obtained about him in regards to his application. He was told that he could not see his application but that he could obtain a copy of the background check.

21.     Owens thereafter went to HHS and Kenya provided him with copies of a Background Screening Report from JD Palatine, a medical services report from JD Palatine and LabCorp, an immunization review, and a urine chain of custody form. (*See* Background Check and Medical Screening Paperwork, attached Group Exhibit A.)

22.     Plaintiff did not receive a copy of the reports HHS relied on at any point prior to being told he wasn't being hired.

23.     Likewise, Plaintiff wasn't provided any summary of his rights under the FCRA.

24.     Plaintiff was also denied a copy of his application and related paperwork.

25.     On or about June 13, 2017 Owens sent, through his counsel, a letter requesting HHS's file on Owens, including any FCRA notice or authorization provided to him. (*See* Exhibit B.) A representative for HHS signed the certified mail receipt on June 16, 2017 but to date HHS has failed to provide any response (a response was requested by June 30, 2017.

26.     Thus, and critically, HHS skips the pre-adverse action process entirely. Under the FCRA, it was required to send Plaintiff a pre-adverse action notice, including a copy of the background check and medical reports, *before* taking adverse action. Instead of sending the required pre-adverse action documents, Defendant failed to send any pre-adverse action notice at all. Rather, it took adverse action against Plaintiff and then, after he called and requested

information, HHS provided him with the reports (yet still no summary of FCRA rights). This is improper under the FCRA.

27.     HHS has also disregarded its duty to devise policies and procedures "that are appropriate, keeping in mind the clear purpose of the [FCRA] provisions to allow consumers to discuss the report with employers before adverse action is taken." (*See, e.g.*, FTC Advisory Letters to Lewis, Coffey, and Hawkey, available at http://www.ftc.gov/policy/advisory-opinions/.)

28.     As the FTC has made clear, the purpose of the FCRA section at issue is for job seekers to have the opportunity to review the consumer report and discuss it with their prospective employer before losing out on a job because of information contained in the report. The FTC has made clear that in general an employer must wait at least five (5) business days following the notice to the applicant or employee of the anticipated adverse action before actually taking the adverse action. This notice advises the applicant or employee of their ability to discuss the report with their employer. (*See, e.g.*, FTC Advisory Opinion to Weisberg, available at http://www.ftc.gov/policy/advisory-opinions/advisory-opinion-weisberg-06-27-97.)

29.     Because of the unlawful disclosure provided to applicants and employees including Plaintiff, as well as Defendant's failure to send pre-adverse action notices along with a copy of the consumer report and a summary of FCRA rights, Defendant has willfully denied Plaintiff the rights guaranteed to him by the FCRA. Such a denial entitles him to statutory damages of not less than $100 and not more than $1,000.

## CLASS ACTION ALLEGATIONS

30.    Plaintiff brings this action pursuant to Federal Rule of Civil Procedure 23(b)(2)

and Rule 23(b)(3) on behalf of himself and two Classes defined as follows:

**Disclosure Class**: All persons in the United States (1) who applied for employment with HHS on or after July 20, 2015, (2) about whom Defendant procured a consumer report, and (3) who were provided the same disclosure and authorization regarding the possibility that a consumer report may be procured about them as HHS provided to Plaintiff Owens.

**Pre-Adverse Action Class**: All persons in the United States who (1) were subject to adverse employment action on or after July 20, 2015 based in whole or in part on any consumer report procured by Defendant, and (2) who received a copy of the report, if at all, only after Defendant had already taken adverse action.

Excluded from the Classes are (1) Defendant, Defendant's agents, subsidiaries, parents, successors, predecessors, and any entity in which Defendant or its parents have a controlling interest, and those entities' current and former employees, officers, and directors, (2) the Judge or Magistrate Judge to whom this case is assigned and the Judge's or Magistrate Judge's immediate family, (3) persons who execute and file a timely request for exclusion, (4) persons who have had their claims in this matter finally adjudicated and/or otherwise released, and (5) the legal representatives, successors, and assigns of any such excluded person. Plaintiff anticipates needing to amend the class definition following discovery into class issues.

31.    **Numerosity**: The exact number of the members of the Classes is unknown to Plaintiff at this time, but it is clear that individual joinder is impracticable. Defendant has hundreds of employees and a potentially even a greater number of job applicants. Further, the Class members can readily be ascertained through Defendant's records.

7

32.     **Commonality**: Common questions of law and fact exist as to all members of the Classes for which this proceeding will provide common answers in a single stroke based upon common evidence, including:

(a)     Whether Defendant's conduct described herein violated the FCRA;

(b)     Whether Defendant has procured or caused to be procured consumer reports for the purpose of investigating prospective employees;

(c)     Whether Defendant's disclosure violates the FCRA's requirement that the pre-report disclosure "stand alone";

(d)     Whether Defendant has acted willfully;

(e)     Whether Defendant has failed to provide a pre-adverse action notice and copy of the consumer report and summary of FCRA rights to applicants and employees *prior* to taking adverse action and,

(f)     the proper measure of statutory damages and the availability and appropriateness of declaratory and injunctive relief.

33.     **Typicality**: As a result of Defendant's uniform disclosures and conduct, Plaintiff and the Class members suffered the same injury and similar damages. Thus, Plaintiff's claims are typical of the claims of the other Class members.

34.     **Adequate Representation**: Plaintiff is a member of the Classes and both he and his counsel will fairly and adequately represent and protect the interests of the Classes, as neither has interests adverse to those of the Class members and Defendant has no defenses unique to Plaintiff. In addition, Plaintiff has retained counsel competent and experienced in complex litigation and class actions. Further, Plaintiff and his counsel are committed to vigorously

prosecuting this action on behalf of the members of the Classes, and Counsel has the resources to do so.

35.     **Injunctive and Declaratory Relief**: In using uniform disclosures that violate the FCRA and by uniformly failing to provide proper pre-adverse action notices as required, Defendant has acted or refused to act on grounds generally applicable to the Classes as respective wholes so as to render injunctive and declaratory relief appropriate. Stated differently, Defendant's uniform conduct requires the Court's imposition of uniform relief to ensure compatible standards of conduct toward the Class members, thus making final injunctive and/or declaratory relief appropriate with respect to the Classes as a whole. Further, because Defendant's uniform practices result in similar, if not identical, injuries for all Class members, Plaintiff's challenge of those practices hinges on Defendant's conduct with respect to the Classes, not on facts or law applicable only to Plaintiff.

36.     **Predominance:** The common questions of law and fact set forth above go to the very heart of the controversy and predominate over any supposed individualized questions. Irrespective of any given Class member's situation, the answer to whether Defendant's pre-report disclosure and failure to provide pre-adverse action notices and documents are unlawful is the same for everyone and they will be proven using common evidence.

37.     **Superiority and Manageability**: A class action is superior to all other methods of adjudicating the controversy. Joinder of all class is impractical, and the damages suffered by/available to the individual Class members will likely be small relative to the cost associated with prosecuting an action. Thus, the expense of litigating an individual action will likely prohibit the Class members from obtaining effective relief for Defendant's misconduct. In

addition, there are numerous common factual and legal questions that could result in inconsistent verdicts should there be several successive trials. In contract, a class action will present far fewer management difficulties, as it will increase efficiency and decrease expense. Further, class-wide adjudication will also ensure a uniform decision for the Class members.

38.     Plaintiff reserves the right to revise the definition of the Class as necessary based upon information learned in discovery.

**COUNT I**
**Violation of 15 U.S.C. § 1681b(b)(2)(A)(i)**
**(On Behalf of Plaintiff and the Disclosure Class)**

39.     Plaintiff incorporates by reference the foregoing allegations as if fully set forth herein.

40.     The FCRA states that:

Except as provided in subparagraph (B), a person may not procure a consumer report, or cause a consumer report to be procured, for employment purposes with respect to any consumer, unless—

(i) a clear and conspicuous disclosure has been made in writing  to the consumer at any time before the report is procured or caused to be procured, in a document that consists solely of the disclosure, that a consumer report may be obtained for employment purposes . . . .

15 U.S.C. § 1681b(b)(2)(A) (emphasis added).

41.     The FCRA defines a consumer report as:

. . . any written, oral, or other communication of any information by a consumer reporting agency bearing on a consumers' credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living which is used or excepted to be used or collected in whole or in part for the purpose of serving as a factor establishing the consumer's eligibility for . . .

(B) employment purposes . . . .

15 U.S.C. § 1681a(d)(1).

42.     On information and belief, the pre-report disclosure that Defendant provided to Plaintiff and the putative Disclosure Class members as part of the application process willfully violated the FCRA by not being clear and conspicuous and by including extraneous information such that the disclosure cannot be said to "stand alone."[1]

43.     Defendant procured consumer reports, including background screening reports and medical screening reports, with respect to Plaintiff and the Disclosure Class members. The disclosure provided to Plaintiff was the same or substantially the same as the one provided to all Disclosure Class members. Thus, by providing a faulty disclosure and authorization to Plaintiff, Defendant uniformly violated the rights of all Class members in the same way by including extraneous information in the disclosure that made it vague and confusing.

44.     As a result, Plaintiff did not understand the disclosures.

45.     Defendant's violation of 15 U.S.C. § 1681b(b)(2)(A)(i) was willful for at least the following reasons:

(i)     The rule that FRCA disclosures be "clear and conspicuous" and part of a document consisting "solely" of that disclosure has been the law established for well over a decade.

(ii)     Defendant is a large corporation who regularly engages outside counsel— it had ample means and opportunity to seek legal advice regarding its FCRA responsibilities. As such, any violations were made in conscious disregard of the rights of others.

---

[1] On June 13, 2017 Owens's counsel sent, via certified letter, a request to HHS for Owens's application and file, including all disclosures regarding HHS's obtaining of any background check or medical screening. (See Ex. A; received June 16, 2017.) Although Plaintiff asked for an answer by June 30, 2017 to date HHS has failed to respond.

(iii)     Clear judicial and administrative guidance—dating back to at least the 1990s—regarding a corporation's FCRA responsibilities exists and is readily available explaining that such disclosures must stand-alone. This readily-available guidance means Defendant either was aware of its responsibilities or plainly should have been aware of its responsibilities but ignored them and violated the FCRA anyway.

46.     Plaintiff and the Disclosure Class are entitled to statutory damages of not less than $100 and not more than $1,000 for each of Defendant's willful violations pursuant to 15 U.S.C. § 1681n(a)(1)(A).

47.     Accordingly, under the FCRA, Plaintiff and the Disclosure Class seek statutory damages, reasonable cost and attorneys' fees, an injunction against further violations, and a declaration that Defendant's conduct is unlawful.

## COUNT II
### Violation of 15 U.S.C. § 1681b(b)(3)
### (On Behalf of Plaintiff and the Pre-Adverse Action Class)

48.     Plaintiff incorporates by reference the foregoing allegations as if fully set forth herein.

49.     The FCRA provides that:

(3) Conditions on use for adverse actions.

(A) In General. Except as provided in subparagraph (b), in using a consumer report for employment purposes, *before* taking any adverse action based in whole or in part on the report, the person intending to take such adverse action shall provide to the consumer to whom the report relates—

(i)      a copy of the report; and
(ii)     a description in writing of the rights of the consumer under this subchapter, as prescribed by the Bureau under section 1681g(c)(3) of this title.

*See* 15 U.S.C. 1681b(b)(3) (Emphasis added).

12

50.     The FCRA defines adverse action as "a denial of employment or any other decision for employment purposes that adversely affects any current or prospective employee." 15 U.S.C. § 1681a(k)(1)(B)(ii).

51.     Defendant violated Section 1681b(b)(3)(A) of the FCRA by failing to provide Plaintiff and members of the Pre-Adverse Action Class with a copy of their consumer reports under the FCRA before taking adverse employment action against them. Instead, Defendant only provides copies of such papers if they are requested *after* adverse action has already been taken. And at no time does Defendant provide a summary of the employee or applicant's rights under the FCRA as required.

52.     Defendant obtained a consumer report about Plaintiff for employment purposes. Based in whole or in part on information contained within Plaintiff's consumer report, Defendant did not hire Plaintiff—an adverse employment action.

53.     In contravention of the FCRA, Defendant willfully failed to provide Plaintiff with his consumer report and a written description of his rights before taking such adverse action.

54.     The FCRA requires that the employee or applicant receive five (5) business days to explain such negative information directly to the employer before adverse action is taken. Not with HHS. That is, HHS doesn't afford any time to dispute the information contained in the report or to explain any negative information to Defendant. Simply put, Defendant skipped the "pre-adverse action" step entirely with respect to Plaintiff and the rest of the class members. As such, Owens has been denied rights specifically guaranteed to him under the FCRA.

55.     Defendant's violations of 15 U.S.C. § 1681b(b)(3)(A) were willful. The rule that a copy of the report relied upon must be sent to a person against whom an employer intends to take

adverse action before such adverse action is taken is well established. Defendant is a large corporation that regularly engages counsel—it has ample means and opportunity to seek legal advice regarding their FCRA responsibilities. Further, there is a glut of judicial and administrative guidance—dating back to the 1990's—regarding a corporation's FCRA responsibilities. As a consequence of such readily available guidance, Defendant either were aware of its responsibilities or should have been aware of its responsibilities but violated the FCRA anyway.

56.     Plaintiff and the Pre-Adverse Action Class are entitled to statutory damages of not less than $100 and not more than $1,000 for each of Defendant's willful violations pursuant to 15 U.S.C. § 1681n(a)(1)(A).

57.     Accordingly, under the FCRA, Plaintiff and the Pre-Adverse Action Class seek statutory damages, reasonable cost and attorneys' fees, an injunction against further violations, and a declaration that Defendant's conduct is unlawful.

<b>PRAYER FOR RELIEF</b>

WHEREFORE, Plaintiff Gerome Owens, individually and on behalf of the Classes, respectfully requests that this Court issue an order:

A.     Certifying this case as a class action on behalf of the Classes defined above, appointing Gerome Owens as class representative and appointing his counsel as class counsel;

B.     Declaring that Defendant's actions, as set out above, constitute violations of the Fair Credit Reporting Act, 15 U.S.C. § 1681b;

C.     Awarding damages, including statutory and treble damages where applicable, to

Plaintiff and the Classes in amounts to be determined at trial;

D.   Awarding injunctive and other equitable relief as is necessary to protect the interests of the Classes, *inter alia*: (i) an order prohibiting Defendant from engaging in the wrongful and unlawful actions described herein; and (ii) requiring Defendant to provide proper disclosures, notices, and documents under federal law;

E.   Awarding Plaintiff and the Classes their reasonable litigation expenses and attorneys' fees;

F.   Awarding Plaintiff and the Classes pre- and post- judgment interest, to the extent allowable;

G.   Providing such other injunctive and/or declaratory relief as necessary to protect the interests of Plaintiff and the Classes; and

H.   Such further and other relief as the Court deems reasonable and just.


Dated: July 21, 17                              Respectfully submitted,

                                                **GEROME OWENS**, individually and on behalf of
                                                all others similarly situated,

                                                /s/ Robert Kleinman
                                                  One of Plaintiff's Attorneys


Robert B. Kleinman
Admitted to the Western District
Texas Bar No. 24055786
Kleinman Law Firm PLLC
404 W. 7th Street

Austin, TX 78701
Phone: 512.299.5329
Fax: 512.628.3390
Robert@kleinmanlawfirm.com


Steven L. Woodrow*
swoodrow@woodrowpeluso.com
Patrick H. Peluso*
mlindsey@woodrowpeluso.com
Woodrow & Peluso, LLC
3900 East Mexico Avenue, Suite 300
Denver, Colorado 80210
Tel: 720.213.0675
Fax: 303.927.0809

* *Pro Hac Vice* admission to be filed

*Attorneys for Plaintiff and the Putative Class*

## <u>LOCAL RULE CV-5 CERTIFICATION</u>

I, Robert Kleinman, hereby certify that on July 21, 17, I filed the above and foregoing

***Class Action Complaint and Demand for Jury Trial*** with the Clerk of the Court

/s/ Robert Kleinman

Robert Kleinman